Joseph R. Saveri (State Bar No. 130064)
JOSEPH SAVERI LAW FIRM, INC.
555 Montgomery Street, Ste. 1210
San Francisco, CA 94111
Telephone: 415.500.6800
Facsimile: 415.395.9940
jsaveri@saverilawfirm.com

Daniel R. Karon (*pro hac vice* pending)
KARON LLC
700 W. St. Clair Ave. Ste. 200
Cleveland, Ohio 44113
Telephone: 216.622.1851
Facsimile: 216.241.8175
dkaron@karonllc.com

Vincent J. Esades (*pro hac vice* pending)
HEINS MILLS & OLSON, PLC
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: 612.338.4605
Facsimile: 612.338.4692
vesades@heinsmills.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER WARE, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br> v.<br><br>HP INC.,<br><br>     Defendant. | Case No. 5:16-cv-06519<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. UNFAIR METHODS OF COMPETITION IN VIOLATION OF THE UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*<br><br>2. UNJUST ENRICHMENT.<br><br><u>DEMAND FOR JURY TRIAL</u> |

Case No. 5:16-cv-06519

CLASS ACTION COMPLAINT

Plaintiff Christopher Ware ("Plaintiff"), individually and on behalf of all others similarly situated, allege the following against Defendant HP Inc. ("HP"):

## I. SUMMARY OF THE ACTION

1. On September 13, 2016, thousands of HP printers in homes and offices throughout the United States failed in unison. These simultaneous failures were no coincidence. They resulted from HP's implementation of a software update for the purpose of disabling printers that contained ink cartridges manufactured by HP's competitors. The failed HP printers remain inoperable today unless an owner replaces non-HP ink cartridges with HP cartridges.

2. The failed HP printers display an error message that the ink cartridges appear to be "damaged or missing" and therefore should be replaced. But the non-HP ink cartridges in these printers are neither damaged, missing, nor out of ink. HP installed the disabling software update as a means of gaining an advantage over its competition in the market for printer ink cartridges.

3. The persons immediately harmed by HP's unfair methods of competition were those who owned its printers. Plaintiff by this action seeks relief for himself and the other owners of printers that HP wrongfully rendered inoperable.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (a) at least one member of the Class is a citizen of a state different from HP, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the Class includes more than 100 members, and (d) none of the exceptions under the subsection apply to this action.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because HP's principal place of business is within this District, and a substantial part of the events or omissions that give rise to Plaintiff's claims occurred in this District. HP executives and employees devised and carried out the scheme underlying these claims at HP's headquarters in Palo Alto, California.

## III. INTRADISTRICT ASSIGNMENT

6. Assignment to the San Jose Division is proper under Local Rule 3-2(c) because a substantial part of the conduct at issue in this case occurred in Santa Clara County.

### IV. PARTIES

7. Defendant HP Inc. is a Delaware corporation headquartered in Palo Alto, California

8. Plaintiff Christopher Ware is a citizen of New Jersey who resides in Hillsdale, New Jersey.

### V. FACTS SPECIFIC TO PLAINTIFF

#### A. Plaintiff Christopher Ware

9. In January 2012, Ware purchased an HP 8610 OfficeJet Pro printer. When the cartridges in his printer ran out of ink, Ware purchased replacement cartridges manufactured by a competitor of HP. Those cartridges continued functioning up until mid-September 2016.

10. In mid-September 2016, Ware's HP printer unexpectedly failed and no longer printed documents.

11. The failure of Ware's HP printer was directly and proximately attributable to actions by HP to disable it.

12. Immediately after Ware's printer failed, the screen on the printer displayed a message directing him to remove "damaged" ink cartridges and replace them with new cartridges. A link to a Website accompanied this message. Ware clicked on the link on his printer's screen. The link was to an HP Website selling HP ink cartridges.

13. The inoperability of his printer has caused Ware to expend time and money to satisfy his document printing needs.

### VI. COMMON ALLEGATIONS OF FACT

#### A. HP's Printer and Printer Ink Business

14. HP sells computers, printers, and printer services. Printers—and printer ink—account for nearly half of HP's business.

15. With regard to HP's printer business, HP obtains most of its profits from the sale of ink cartridges used in HP printers.

16. These ink cartridges are generally priced at $13 to $75 per ounce ($1,664 to $9,600 per gallon). As such, the cost of ink cartridges often amounts to a substantial fraction of the cost of the purchase and operation of the printer housing the cartridges.

17. HP obtains little or no profits from the sale of HP printers.

18. HP obtains substantial profits from the sale of HP printer ink cartridges.

19. Manufacturers in competition with HP sell printer ink cartridges that are compatible with HP printers and often priced below the corresponding HP cartridges. To save money, owners of HP printers frequently purchase such non-HP cartridges.

20. Microchip technology allows HP to detect whether HP printers already sold are using HP or non-HP cartridges.

21. Because the HP printers at issue here (the "Class Printers") connect to the Internet, HP is able to communicate with the Class Printers after they have been sold. HP is therefore able to remotely update the Class Printers' software.

**B.     The Class Printers**

22. The Class Printers comprise HP printers and all-in-one devices—which perform some combination of printing, copying, scanning, and faxing—in the following product series: (a) OfficeJet 286220 series; (b) OfficeJet Pro 6230 series; (c) OfficeJet 6820 series; (d) OfficeJet Pro 6830 series; (e) OfficeJet 8600 series; and (f) OfficeJet Pro X series.

23. The Class Printers are small-format devices typically, but not exclusively, used in homes or small offices.

24. The Class Printers rely on ink cartridges for the ink with which they print documents.

25. HP derives a significant portion of its printer ink revenue from sales of replacement ink cartridges for the Class Printers.

26. On or about September 13, 2016, or soon thereafter, thousands of Class Printers throughout the United States failed.

27. Failed Class Printers displayed the following error message:



28. The failure of Class Printers, however, did not result from any problem or error with the ink cartridges they contained. Notwithstanding HP's error message, the ink cartridges in the failed Class Printers were neither missing nor damaged.

29. The failed Class Printers still do not work unless they are loaded with replacement ink cartridges manufactured by HP.

C. **HP's Scheme to Repel Competition to Its Ink Cartridges and Constrain Its Customers' Purchasing Options**

30. HP purposely caused Class Printers with non-HP ink cartridges to fail.

31. The failure of Class Printers was the product of malicious code that HP wrote and installed.

32. In or around March 2016, HP created and distributed a firmware update for Class Printers. (Firmware is a type of software that is semi-permanently embedded in an electronic device.)

Case No. 5:16-cv-06519                                                4
                                                                      CLASS ACTION COMPLAINT

33. Although HP distributed its firmware update in or around March 2016, HP did not activate this update until September 2016. HP delayed activation of its update to increase the number of printers the update would affect.

34. The purpose of HP's firmware update was to disable HP printers containing non-HP ink cartridges. By doing so, HP intended to force purchases of HP's higher-priced cartridges and to reduce the market share of its ink cartridge competitors. Thus, through its update, HP sought to repel competition from more affordable ink cartridges on the market.

35. HP carried out this scheme in order to restrict the choices available to its customers, induce them to purchase more HP products, and protect HP's profits from sales of non-HP products.

36. HP's conduct in disabling Class Printers prompted a flurry of complaints and criticism from consumers, advocacy groups, and others.[1]

37. On September 28, 2016, Jon Flaxman, the Chief Operating Officer of HP, issued a public statement apologizing for HP's conduct.[2] Mr. Flaxman stated: "We should have done a better job of communicating about the authentication procedure to customers, and we apologize. … Again, to our loyal customers who were affected, we apologize."

**D.    The HP Warranty**

38. HP's express warranty accompanying the Class Printers (the "Warranty") contemplates the use of non-HP-manufactured replacement cartridges in HP printers.

39. The Warranty provides: "The use of a non-HP or refilled cartridge does not affect either the HP Limited Warranty to the end-user customer or any HP support contract with the end-user customer for the printer." Pursuant to the Warranty, HP's technical support services do "NOT include

---

[1] *E.g.*, *HP Launched Delayed DRM Time Bomb to Disable Competing Printer Cartridges*, https://www.techdirt.com/articles/20160920/07021035568/hp-launched-delayed-drm-time-bomb-to-disable-competing-printer- cartridges.shtml (last visited Oct. 5, 2016); *EFF calls on HP to disable printer self-destruct sequence*, http://arstechnica.com/information-technology/2016/09/hp-should-apologize-and-stop-sabotaging-non-hp-ink-cartridges-eff-says/ (last visited Oct. 5, 2016).

[2] *Dedicated to the best printing experience*, http://www8.hp.com/us/en/hp-news/blog/Small-Business-Printing/best-possible-printing-experience.html?source=aw&aid=7168&jumpid=af_6mrc7uxaeb&awc=7168_1475273723_78f4d01e0844c1ceeab6b6cee5a4b2d7&aoid=35252&pbid=291795&siteid=http%3A%2F%2Fwww%2Edigitaltrends%2Ecom%2F (last visited Oct. 6, 2016).

assistance with . . . installation of non-HP software purchased separately," but "non-HP manufacturers and suppliers or publishers may provide their own warranties directly to you."

40. The Warranty further states that where "printer or print head failure or damage is attributable to the use of a non-HP or refilled cartridge, HP will charge its standard time and materials charges to service the printer for the particular failure or damage…."

41. HP's disablement of Class Printers caused HP to profit from servicing products that had failed by design.

## CLASS ACTION ALLEGATIONS

42. Plaintiff brings this action under Federal Rule of Civil Procedure 23 on behalf of:

> All persons in the United States who own or owned one or more HP printers or devices at any time from September 12, 2016 to the present, in any of the following categories: OfficeJet 6220 series; OfficeJet Pro 6230 series; OfficeJet 6820 series; OfficeJet Pro 6830 series; OfficeJet 8600 series; OfficeJet Pro X series.

Excluded from this proposed Class are HP's officers, directors, legal representatives, successors, and assigns; any entity in which HP has a controlling interest; and judicial officers to whom this case is assigned and their immediate family members.

43. Plaintiff reserves the ability to modify the definition of the proposed Class before the Court determines whether class certification is warranted.

44. The requirements of Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3) are met in this case.

45. Numerosity. The Class consists of thousands of owners of Class Printers, making joinder of each Class member impracticable.

46. Commonality and Predominance. Common questions of law and fact exist for each of the causes of action and predominate over questions affecting only individual Class members. Questions common to the Class include:

    a. Whether HP's acts and practices described herein constitute unfair methods of competition;

    b. Whether HP engaged in unfair acts or practices in the conduct of trade;

  c. Whether HP's conduct is substantially injurious to owners of its products;

  d. Whether HP was unjustly enriched by reason of the aforesaid practices;

  e. Whether Plaintiff and the Class are entitled to restitution and, if so, in what amount; and

  f. Whether Plaintiff and the Class are entitled to other appropriate equitable relief.

47. Typicality. Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all Class members, purchased Class Printers that HP unilaterally disabled and rendered inoperable. Each Class member's claims arise from the same tortious conduct of HP.

48. Adequacy. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests do not conflict with the interests of Class members, and they have retained counsel experienced in prosecuting class action and consumer protection litigation.

49. In addition to satisfying the prerequisites of Rule 23(a), Plaintiff satisfies the requirements for maintaining a class action under Rule 23(b)(3).

50. Superiority. A class action is superior to individual adjudications of this controversy. Litigation is not economically feasible for individual Class members because the amount of monetary relief available to individual plaintiffs is insufficient in the absence of the class action procedure. Separate litigation could yield inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. A class action presents fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

51. Class certification also is appropriate under Rule 23(b)(1) and/or (b)(2) because:

  a. the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for HP;

  b. the prosecution of separate actions by individual Class members would create a risk of adjudication of their rights that, as a practical matter, would be dispositive of the interests of other Class members not parties to such adjudications or would substantially impair or impede other Class members' ability to protect their interests; and

      c.      HP has acted and refused to act on grounds that apply generally to the Class such that final injunctive relief and/or declaratory relief is warranted with respect to the Class as a whole.

## FIRST CLAIM FOR RELIEF
### Violations of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

52.    Plaintiff incorporates the above allegations by reference.

53.    HP's conduct detailed herein resulted from policies that HP contrived, ratified, and implemented in California.

54.    HP's conduct detailed herein is unlawful, in violation of the UCL, because it contravenes the legislatively declared policy against unfair methods of competition.

55.    HP engaged in unfair methods of competition and unfair trade practices that violate the UCL in at least the following respects:

      a.      With the intent and effect of stifling free and open competition in the market for printer cartridges, HP devised and executed a material change to printers it had sold.

      b.      HP intentionally caused HP printers to stop functioning upon detection of cartridges manufactured by HP's competitors.

      c.      HP conditioned the operation of HP printers on their owners' purchases of HP products in another product market.

      d.      HP tied HP printers' functionality to their owners' purchases of HP cartridges even though HP's Warranty expressly contemplates that printer owners may, will, and do replace depleted printer cartridges with cartridges not made or sold by HP. HP rendered printers it had sold inoperable without prior notice to their owners.

      e.      HP printers remain inoperable as a result of HP's conduct unless their owners purchase and install cartridges made and sold by HP.

      f.      To induce purchases of HP cartridges, HP provided misleading written messages on the screens of all of the failed Class Printers directing their owners to replace non-HP cartridges that, in fact, still contained ink and, but for HP's conduct, would function in an ordinary manner.

g. HP's conduct was designed to increase and maintain its share of the printer cartridge market due to conditions separate from competitive factors such as pricing and quality of goods.

56. HP acted to inhibit competition in a manner that is unfair and substantially injurious to the consuming public. HP's unfair methods of competition and unfair acts and practices are contrary to California law and policy and constitute unscrupulous, unethical, outrageous, and oppressive business practices.

57. The gravity of the harm resulting from HP's conduct set forth above outweighs any possible utility of the conduct. There are reasonably available alternatives that would further HP's legitimate business interests, such as refraining from disabling printers that contain ink cartridges manufactured by other companies.

58. Plaintiff and Class members could not have reasonably avoided injury from HP's unfair business conduct. Plaintiff and Class members did not know, and had no reasonable means of learning, that HP would unilaterally disable their printers upon detecting ink cartridges manufactured by HP's competitors.

59. As a direct and proximate result of HP's conduct, Plaintiff and Class members have suffered injuries in fact, including, without limitation, the following:

a. While Plaintiff and Class members depend on the Class Printers to transact business and/or to manage important aspects of their personal and family lives, HP's unfair methods of competition and unfair acts and practices have thwarted and deprived them of the use of the Class Printers.

b. HP's unfair methods of competition and unfair acts and practices have prevented Plaintiff and Class members from making purchasing decisions on the basis of competitive factors in the marketplace for consumer and business goods.

c. HP's unfair methods of competition and unfair acts and practices have caused Plaintiff and Class members to incur lost time and out-of-pocket costs for, among other things, replacement printers and printer cartridges.

60. HP's unfair methods of competition and unfair acts and practices have caused Plaintiff's and Class members' Class Printers to suffer a loss in value.

61. All of HP's unlawful and unfair conduct occurred in the course of HP's business and was part of a generalized course of conduct. HP's decision to disable Class Printers originated in HP's operations, sales, and/or marketing divisions within the State of California.

62. Plaintiff and the Class accordingly are entitled to relief as provided for under the UCL, including restitution, declaratory relief, and a permanent injunction prohibiting HP from committing these violations and requiring HP to reverse its unfair and unlawful disablement of Class Printers.

63. Plaintiff also respectfully requests reasonable attorneys' fees and costs under applicable law, including California Code of Civil Procedure section 1021.5.

## SECOND CLAIM FOR RELIEF
## Unjust Enrichment

64. Plaintiff incorporates the above allegations by reference.

65. Plaintiff and Class members conferred a benefit on HP by purchasing HP printers and ink and paying other sums that benefited HP.

66. HP acted wrongfully by disabling Plaintiff's and Class members' Class Printers without their prior knowledge or approval, and in an effort to compete unfairly in the marketplace for business and consumer goods.

67. HP's scheme to incapacitate printers containing its competitors' ink cartridges has caused HP to profit from sales of its own printers and ink cartridges, as well as from service charges, to Plaintiff and Class members.

68. Based on the foregoing, retention by HP of its ill-gotten gain is unjust and inequitable.

69. Plaintiff and Class members are entitled to restitution of their losses, and HP should be required to disgorge its ill-gotten gain.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class defined above, respectfully request that this Court:

   a. Certify this case as a class action pursuant to Federal Rule of Civil Procedure 23, appoint Plaintiff as the Class representatives, and appoint the undersigned counsel as Class counsel;

   b. Order restitution to Plaintiff and Class members;

   c. Enter injunctive and declaratory relief as appropriate under the applicable law;

   d. Award Plaintiff and Class members pre-judgment and/or post-judgment interest as prescribed by law;

   e. Award reasonable attorneys' fees and costs as permitted by law; and

   f. Enter such other and further relief as may be just and proper.

## VII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: November 9, 2016   Respectfully Submitted,
             JOSEPH SAVERI LAW FIRM, INC.

             By: */s/ Joseph R. Saveri*
                Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
JOSEPH SAVERI LAW FIRM, INC.
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Telephone: (415) 500-6800
Facsimile: (415) 395-9940

Counsel for Plaintiff